1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10    PATRICK SHAUN LOVEDAY,

11              Petitioner,                    No. CIV S-05-0105 GEB DAD P

12         vs.

13    R. B. HAWS, Warden,

14              Respondent.              FINDINGS & RECOMMENDATIONS

15    _____/

16              Petitioner is a state prisoner proceeding pro se with an application for a writ of

17    habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

18    entered against him on February 14, 2001 in the San Joaquin County Superior Court on charges

19    of murder, sodomy and rape, with the special circumstances finding that the murder was

20    committed while petitioner was engaged in the crimes of sodomy and rape.  He seeks relief on

21    the grounds that: (1) the trial court violated his right to due process by admitting into evidence

22    his statements made over the jail ventilation system, a tape recording of a song he sang in his jail

23    cell, and DNA and fingerprint evidence; (2) the trial court violated his right to due process by

24    denying his request for substitute counsel; and (3) his trial and appellate counsel rendered

25    ineffective assistance.  Upon careful consideration of the record and the applicable law, the

26    undersigned will recommend that petitioner's application for habeas corpus relief be denied.

1

PROCEDURAL AND FACTUAL BACKGROUND[1]

Defendant Patrick Shawn Loveday was convicted of murder (Pen.Code, § 187),[2] sodomy ( § 286, subd. (c)(2)), and rape (§ 261, subd. (a)(2)).  The jury also found two special circumstances allegations true, specifically, that the murder was committed while defendant was engaged in the crime of sodomy and that the murder was committed while defendant was engaged in the crime of rape . . . .

STATEMENT OF FACTS

The victim, Irene Powell, and her husband Fred were having marital problems largely relating to her drug use.  During the two weeks prior to her murder, the Powells' relationship was improving.  The Powells had sexual relations both the night before and the morning that Irene was murdered.  On the afternoon of the 26th of September, 1998, Irene left to take clothes to the laundromat.  Fred never saw her again.

On September 27th, while a local farmer was checking out his ranch he found Irene's body in a walnut orchard.  The farmer called 911.  Deputy Sheriff Herrera was dispatched to the orchard.  When he arrived at the scene, he saw a woman who appeared to be Hispanic.  She was mostly nude.  Her white shirt was pulled forward, exposing her back and the cups of her bra were pulled up over her breasts.  She was on her knees, with her rear-end up in the air and the top of her head touching the ground at an extremely tilted angle.  Both arms were down, tucked beneath her body.  Her anus appeared unnaturally large.

The dirt in the area where the body was found was hard, uneven and dry.  There were faint tire marks in the row where Irene was found.  There were various locations in the dirt where someone had stood or knelt.  One of these locations was directly behind Irene, between her knees.

Irene's red Thunderbird was found at a motel.  There were large blood smears on the hood of the car, the steering wheel, the center

---

[1]  The following summary is drawn from the October 10, 2002 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), designated as Lodged Document 1, at pgs 1-5.  This court presumes that the state court's findings of fact are correct unless petitioner rebuts that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).  Petitioner has not overcome the presumption with respect to the underlying events.  The court will therefore rely on the state court's recitation of the facts.

[2]  Unless otherwise indicated further statutory references are to the Penal Code.

console, and the passenger side door.  Defendant's fingerprints were found inside Irene's car.

Irene had a number of abrasions and contusions on her body.  She had bruises on her neck and both lips and her right eye was swollen shut.  There was a series of bruises measuring two and one-half to three inches long, one-half inch high, and one-half inch wide on her left thigh.  The similarity of these bruises in size and shape suggested they were made by the same object.  Bones in her neck were broken.  There was dirt on her body, her face and surrounding the anus.  There were no anal injuries but the anus was dilated.  From her injuries, it appeared Irene had been strangled, stabbed and severely beaten all over her body, probably by something other than a fist.  The forensic pathologist concluded the cause of death was manual strangulation.

Sperm was found in both the vaginal and anal swabs and semen was found in the rectal swab.  All the DNA samples recovered from Irene's body were matched to Irene, Fred or defendant.  Some of the sperm from the vaginal swabs was consistent with Fred Powell's DNA.  The sperm from the rectal swabs was "indistinguishable" from defendant's DNA.  There were additional DNA fragments in the vaginal swab which were consistent with defendant's DNA.  Although the presence of sperm revealed a sexual act, the condition of the anus and the vagina did not establish whether the sexual act was forced or consensual.  Fred testified he and Irene had not had anal sex and Irene did not like anal sex.

Irene and defendant had a history of smoking crack cocaine together.  Irene would go to defendant's apartment about once a week and they would get high.

In September or October 1998, Shana Morris began dating defendant.  Defendant told her he had killed someone.  He went on to relate the details telling her he had met a lady and they had gone for a drive in her red Thunderbird.  They stopped and smoked some rock cocaine.  The lady owed defendant money for the drugs and he got mad.  He hit her in the face, slammed her face into the hood of the car, and strangled her.  He left her face down in a puddle in an orchard.  He used her pants to wipe his fingerprints out of the car.  Defendant did not tell Ms. Morris about any sexual activity between himself and Irene.  The information Ms. Morris related to the police included details of the crime which had been withheld from the public.

In August 1999, Detective Wuest went to the jail to take defendant's fingerprints.  After defendant was returned to his cell, Detective Wuest and Correctional Officer Ralph Huggins listened to defendant via the intercom system in the jail cells.  Detective Wuest recorded defendant's comments.  After Detective Wuest

testified about the specific contents of the tape, which, essentially, was defendant rapping various lyrics such as "They're trying to give me murder and I'm not going to take it." The tape of this performance was played for the jury.

Huggins also heard an additional conversation between defendant and other inmates. Specifically, defendant admitted he had killed Irene by "choking her out." He also stated he had had sex with Irene in exchange for drugs.

STATEMENT OF CASE

Jury trial commenced on January 18, 2001, and a verdict was reached on February 14, 2001. The jury found defendant guilty of murder, sodomy and rape and found both special circumstances allegations true. Defendant was sentenced to life without possibility of parole on the murder with special circumstances charge and the upper terms of eight years on both the rape and sodomy charges. These latter two sentences were stayed pending successful conclusion of the murder sentence.

ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

/////

1  An application for a writ of habeas corpus on behalf of a
2  person in custody pursuant to the judgment of a State court shall
   not be granted with respect to any claim that was adjudicated on
3  the merits in State court proceedings unless the adjudication of the
   claim -

4  (1) resulted in a decision that was contrary to, or involved
   an unreasonable application of, clearly established Federal law, as
5  determined by the Supreme Court of the United States; or

6  (2) resulted in a decision that was based on an unreasonable
   determination of the facts in light of the evidence presented in the
7  State court proceeding.

8  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

9  (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

10  The court looks to the last reasoned state court decision as the basis for the state

11 court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

12 court reaches a decision on the merits but provides no reasoning to support its conclusion, a

13 federal habeas court independently reviews the record to determine whether habeas corpus relief

14 is available under § 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado

15 v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not reached

16 the merits of a petitioner's claim, or has rejected the claim on procedural grounds, the AEDPA's

17 deferential standard does not apply and a federal habeas court must review the claim de novo.

18 Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th

19 Cir. 2002).

20 II.  Petitioner's Claims

21  A.  Admission of Evidence

22  Petitioner claims that the trial court violated his right to due process by admitting

23 evidence of his statements made over the jail ventilation system, a tape recording of a song he

24 sang in his jail cell, and DNA and fingerprint evidence.  After setting forth the applicable legal

25 principles, the court will evaluate these claims in turn below.

26 /////

5

1    1. Legal Standards

2        Absent some federal constitutional violation, a violation of state law regarding the

3    admissibility of evidence does not provide a basis for habeas relief.  Estelle, 502 U.S. at 67-68.

4    Accordingly, a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas

5    relief only if it renders the state proceedings so fundamentally unfair as to violate due process.

6    Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d 971, 977-78

7    (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991) ("the issue for us,

8    always, is whether the state proceedings satisfied due process; the presence or absence of a state

9    law violation is largely beside the point").  A writ of habeas corpus will be granted for the

10   erroneous admission of evidence "only where the 'testimony is almost entirely unreliable and . . .

11   the factfinder and the adversary system will not be competent to uncover, recognize, and take due

12   account of its shortcomings.'"  Mancuso v. Olivarez, 292 F.3d 939, 956 (9th Cir. 2002) (quoting

13   Barefoot v. Estelle, 463 U.S. 880, 899 (1983)).  Evidence violates due process only if "there are

14   no permissible inferences the jury may draw from the evidence."  Jammal, 926 F.2d at 920.

15   Even then, evidence must "be of such quality as necessarily prevents a fair trial."  Id. (quoting

16   Kealohapauole v. Shimoda, 800 F.2d 1463 (9th Cir. 1986)).

17       2. Statements Over Jail Ventilation System

18       Petitioner claims that his right to due process was violated by the admission into

19   evidence at his trial of statements he made while in jail which were transmitted to the general

20   prison population over a jail ventilation system, which was used by prisoners as an intercom

21   system.  (Pet. at 5.)  Petitioner raised this claim for the first time in a petition for a writ of habeas

22   corpus filed in the San Joaquin County Superior Court.  (Lodged Document 8, typewritten pages

23   following habeas form petition, at 2 & 8-10.)  The Superior Court denied this petition without

24   addressing petitioner's arguments concerning the admission into evidence of his statements

25   transmitted over the ventilation system.  (Lodged Document 9.)  Petitioner raised the claim again

26   in a petition for a writ of habeas corpus filed in the California Court of Appeal.  (Lodged

6

1   Document 10, typewritten pages following habeas form petition, at 2, 8-10.)  That petition was

2   summarily denied by order dated January 22, 2004.  (Lodged Document 11.)  Petitioner then

3   raised this same claim in a petition for a writ of habeas corpus filed in the California Supreme

4   Court.  (Lodged Document 4, typewritten pages following habeas form petition, at 2 & 8-10.)

5   That petition was summarily denied by order dated December 15, 2004.  (Lodged Document 5.)

6   Because there appears to be no state court decision on the merits of petitioner's claim that his

7   right to due process was violated by the admission into evidence of his statements, the court will

8   decide this claim de novo.  Nulph, 333 F.3d at 1056.

9          The state court record reflects that on August 18, 1999, prior to his conviction but

10  after his arrest, petitioner returned from an interview with a correctional officer and spoke to

11  several other inmates.  (Reporter's Transcript on Appeal (RT) at 424.)  In that conversation

12  petitioner stated that he had sex with the victim in exchange for drugs on the evening she died

13  and that she died after "she was choked out."  (Id. at 426.)  When one of the other inmates asked

14  petitioner whether he had killed the victim, he replied, "yeah."  (Id. at 427.)  These statements

15  were related to the jury at petitioner's by Correctional Officer Huggins, who had overheard the

16  conversation in question through the ventilation system.  (Id. at 424-26.)

17         Petitioner has failed to demonstrate that his trial was rendered fundamentally

18  unfair by the admission of his statements into evidence at his trial.  The testimony of Officer

19  Huggins is not unreliable and the evidence is highly relevant in that it consists of an admission by

20  petitioner which tends to prove his guilt.  Petitioner complains that the evidence was

21  "inflammatory."  (Pet. at 5.)  Although the evidence was certainly damaging to petitioner's

22  defense, it was not inadmissible.  See Cal. Evidence Code § 1220 ("Evidence of a statement is

23  not made inadmissible by the hearsay rule when offered against the declarant in an action to

24  which he is a party in either his individual or representative capacity, regardless of whether the

25  statement was made in his individual or representative capacity").  Under the circumstances

26  presented here, the court concludes that petitioner's right to due process was not violated by the

7

1   trial court's decision to admit into evidence petitioner's statements transmitted over the jail

2   ventilation system.  <u>See</u> <u>Jammal</u>, 926 F. 2d at 920 (petitioner was not denied his right to a fair

3   trial by admission of evidence that defendant had $135,000 in trunk of his car when he was

4   arrested, notwithstanding petitioner's claim that he suffered undue prejudice because the jury

5   must have inferred that he was a drug dealer); <u>United States v. Simas</u>, 937 F.2d 459, 464 (9th

6   Cir. 1991) (although evidence introduced at federal criminal trial was "damaging," the defendant

7   failed to show that it resulted in " unfair prejudice"); <u>United States v. Parker</u>, 549 F.2d 1217,

8   1222 (9th Cir. 1977) (stating that evidence is not rendered inadmissible simply because it is

9   highly prejudicial and noting that "the best evidence often is") (quoting <u>United States v. Mahler</u>,

10  452 F.2d 547, 548 (9th Cir. 1971)).  Accordingly, petitioner is not entitled to relief on this claim.

11          3. <u>Singing</u>

12          Petitioner claims that his right to due process was violated when the trial court

13  admitted into evidence a tape recording of his singing in his cell.  (Pet. at 6.)  He complains that

14  the tape was largely unintelligible, that "what the court could make out to be intelligible was

15  nothing close to what the prosecutor and his detective were saying petitioner said," and that the

16  jury was not provided with a transcript of the tape.  (<u>Id.</u>)  In the traverse, petitioner explains that

17  in singing this song he was merely attempting to "mock the police" and that he was aware they

18  were listening to him.  (Traverse at 2-3.)  He denies that his statements were a confession of any

19  kind.  (<u>Id.</u>)  He argues that the jury at his trial was improperly required to listened to "close to an

20  hour" of "unintelligible screaming."  (<u>Id.</u> at 3.)

21          The California Court of Appeal concluded that petitioner waived this due process

22  claim on appeal because of his failure to make a specific objection to the admission of the tape

23  recording when it was offered into evidence at his trial.  The appellate court reasoned as follows:

24          Defendant next complains about the admission of the tape
            recording of him singing and rapping after meeting with Detective
25          Wuest.  Although he never cites Evidence Code section 352,
            defendant's argument on appeal appears to be that the tape was
26          more prejudicial than probative.  He argues the prejudice of

8

admitting this tape was that although "the physical evidence linking [defendant] to the murder was extensive, ... [defendant] at least stood a chance of being convicted of second-degree murder rather than rape and sodomy murder were it not for the words on the tape...."

Defendant admits defense counsel "did not make a straightforward and unequivocal objection to admission of the tape-recorded evidence," but contends "it was clear by inference that defense counsel was objecting to the admissibility of such evidence...." He then quotes defense counsel's "objection," "Your Honor, he's in his cell singing wrap [ sic ] music, singing to himself.  It has no basis to show there's any validity to what he's saying.  There's no questions.  There's no format to it."  We do not agree that this is a "clear" objection, and it certainly is not an objection under Evidence code section 352.

In order to preserve an evidentiary error on appeal, the defendant must make a timely and specific objection at trial.  (Evid.Code, § 353, subd. (a).)  Although it is apparent defense counsel did not want the tape admitted, it is not at all clear what the evidentiary basis for that objection was.  To preserve a claim under Evidence Code section 352, a party must make a timely and specific objection when the evidence is offered so that the trial court is given the opportunity to weigh the relevance and prejudice of the evidence.  (People v. Zapien (1993) 4 Cal.4th 929, 958, 17 Cal.Rptr.2d 122, 846 P.2d 704.)  A general objection is not the equivalent of an objection based on Evidence Code section 352.  (People v. Kirkpatrick (1994) 7 Cal.4th 988, 1014-1015, 30 Cal.Rptr.2d 818, 874 P.2d 248.)  Because there was no specific Evidence Code section 352 objection at trial, defendant has waived this issue.  (Evid.Code, § 353; People v. Kirkpatrick, supra, 7 Cal.4th at pp. 1014-1015, 30 Cal.Rptr.2d 818, 874 P.2d 248.)

(Opinion at 7-9.)

Respondent argues that the state appellate court's ruling constitutes a procedural bar precluding this court from addressing the merits of petitioner's due process claim attacking the admissibility of the tape recording.  (Answer at 11-12.)  Alternatively, respondent argues that the claim should be rejected on the merits.  (Id.)  The court will address both of these contentions below.

a.  Procedural Default

State courts may decline to review a claim based on a procedural default. Wainwright v. Sykes, 433 U.S. 72, 81-82 (1977).  As a general rule, a federal habeas court "'will

1  not review a question of federal law decided by a state court if the decision of that court rests on

2  a state law ground that is independent of the federal question and adequate to support the

3  judgment.'" Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996)

4  (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  The state rule for these purposes is

5  only "adequate" if it is "firmly established and regularly followed." Id. (quoting Ford v.

6  Georgia, 498 U.S. 411, 424 (1991)).  See also Bennett v. Mueller, 322 F.3d 573, 583 (9th Cir.

7  2003) ("[t]o be deemed adequate, the state law ground for decision must be well-established and

8  consistently applied.")  The state rule must also be "independent" in that it is not "interwoven

9  with the federal law."  Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting Michigan

10 v. Long, 463 U.S. 1032, 1040-41 (1983)).  Even if the state rule is independent and adequate, the

11 claims may be reviewed by the federal court if the petitioner can show:  (1) cause for the default

12 and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to

13 consider the claims will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at

14 749-50.

15        Respondent has met his burden of adequately pleading an independent and

16 adequate state procedural ground as an affirmative defense.  See Bennett, 322 F.3d at 586.

17 Petitioner does not deny that his trial counsel did not raise a contemporaneous objection on due

18 process grounds to the admission into evidence of the tape recording of petitioner's singing.

19 Petitioner has also failed to meet his burden of asserting specific factual allegations

20 demonstrating the inadequacy of California's contemporaneous-objection rule as unclear,

21 inconsistently applied or not well-established, either as a general rule or as applied to him.  Id.;

22 Melendez v. Pliler, 288 F.3d 1120, 1124-26 (9th Cir. 2002).  Petitioner's claim is therefore

23 procedurally barred.  See Coleman, 501 U.S. at 747; Harris v. Reed, 489 U.S. 255, 264 n.10

24 (1989); Paulino v. Castro, 371 F.3d 1083, 1092-93 (9th Cir. 2004) (claim that defendant's due

25 process rights were violated by the trial court's failure to instruct sua sponte on the definition of

26 "major participant" was procedurally barred because counsel failed to make a contemporaneous

10

1   objection to the instruction at trial).  Petitioner has failed to demonstrate that there was cause for

2   his procedural default or that a miscarriage of justice would result absent review of the claim by

3   this court.  See Coleman, 501 U.S. at 748; Vansickel v. White, 166 F.3d 953, 957-58 (9th Cir.

4   1999).  The court is therefore precluded from considering the merits of this claim.

5                 b.  Merits of Due Process Claim[3]

6           Even were this claim of evidentiary error not procedurally barred, it lacks merit

7   and should be rejected.  The state court record reflects that a tape recording of petitioner singing

8   a song in his cell was played for the jury at petitioner's trial.  (RT at 512, 554, 556.)  During a

9   discussion with the trial court regarding the tape's admissibility, the prosecutor acknowledged

10   that the tape was "somewhat difficult to hear."  (Id. at 512, 513.)  However, he argued that

11   certain lyrics were very distinct, such as "I'm a sick mother fucker that would straight kill a

12   bitch," and "They're trying to give me murder.  I'm not going to take it.  I don't care.  Throw me

13   in the hole.  Murder, murder, murder.  Kill, kill, kill."  (Id. at 513.)  Petitioner's counsel argued

14   that the tape was meaningless because it was simply "a guy singing in the shower" and that the

15   language employed should not be taken at face value.  (Id. at 513-14.)  The prosecutor countered

16   that the language on the tape was an "admission on [petitioner's] part."  (Id. at 515.)  The trial

17   judge expressed the opinion that "the weight and the effect of the evidence are maybe subject to

18   some controversy," but that the statements constituted "an admission of a party offered by an

19   adverse party" and that they had "some relevance."  (Id.)  The prosecutor conceded that much of

20 ────────────────

21      [3]  After the California Court of Appeal declined to reach this due process claim on the
merits, petitioner raised the claim again in a petition for review filed in the California Supreme

22   Court.  (Lodged Document 2.)  The Supreme Court summarily denied the petition.  (Lodged
Document 3.)  Petitioner raised the claim again in a petition for a writ of habeas corpus filed in

23   the San Joaquin County Superior Court.  (Lodged Document 8.)  The Superior Court rejected the
claim on the ground that it was raised and decided on appeal.  (Lodged Document 9.)  Petitioner

24   subsequently raised the claim in a petition for a writ of habeas corpus filed in the California
Court of Appeal.  (Lodged Document 10.)  The Court of Appeal summarily denied that petition.

25   (Lodged Document 11.)  Petitioner raised the claim again in a petition for a writ of habeas corpus
filed in the California Supreme Court, which summarily denied that petition by order dated

26   December 15, 2004.  (Lodged Documents 4, 5.)  Because no state court has addressed this due
process claim on the merits, the court will review the claim de novo.  Nulph, 333 F.3d at 1056.

1   the tape was "somewhat irrelevant." (Id. at 518.) After listening to the tape, the trial judge stated

2   that he could only hear the phrases "They tried to give me murder and I ain't going to take it,"

3   and "kill, kill, kill." (Id. at 520.) Before the tape was played to the jury, a correctional officer

4   who overheard the song testified that the general theme of it was "They're trying to give me

5   murder, and I'm not going to take it." (Id. at 555.) The officer also testified that after petitioner

6   sang the first song, he sang another familiar pop song entitled "I can fly." (Id. at 556-57.)

7           This court concludes that the admission of the audiotape of petitioner singing in

8   his cell did not render the proceedings fundamentally unfair. The prosecutor, defense counsel,

9   and the trial judge all agreed that the tape was difficult to hear. The correctional officer testified

10  that the main thrust of the song was that, although the authorities were charging petitioner with

11  murder, he wasn't "going to take it." This overall message was not particularly damaging to

12  petitioner's defense. That overarching message certainly was not an admission or a confession.

13  Further, the tape contained petitioner singing parts of two songs, one of which was completely

14  innocuous. Under these circumstances, the tape was not unduly prejudicial. Petitioner has also

15  failed to establish that the trial court's failure to provide the jury with a transcript of the tape

16  rendered his trial fundamentally unfair. On the contrary, the tape may have been more

17  inflammatory if all of the lyrics had been transcribed.

18          All things considered, the admission of the audiotape did not result in a due

19  process violation. Accordingly, petitioner is not entitled to relief on this claim.

20                      4. DNA and Fingerprint Evidence

21          Petitioner claims that the trial court violated his rights pursuant to the Fourth,

22  Fifth and Fourteenth Amendments to the United States Constitution when it admitted into

23  evidence the results of DNA testing of "contaminated swabs & analysis of such results," as well

24  as the results of fingerprint analysis. (Pet. at 5.) Petitioner raised this claim for the first time in

25  his petition for a writ of habeas corpus filed in the San Joaquin County Superior Court. (Lodged

26  /////

1   Document 8, typewritten pages following habeas form petition, at 2 & 14-17.)  The Superior

2   Court rejected the claim on procedural grounds, reasoning as follows:

3              Notably, there is nothing in the record to indicate that objections
               were made to the scientific evidence put in issue by this writ
4              petition.  Absent an objection, the issue is waived.  Moreover,
               evidentiary rulings on the admissibility of evidence are not
5              cognizable habeas corpus claims.  In re Harris (1993) 5 C.(sic) 4th
               813, 826.

6

7   (Lodged Document 9 at 2.)  Subsequent petitions filed with the California Court of Appeal and

8   the California Supreme Court containing the same claim were summarily denied.  (Lodged

9   Documents 4, 5, 10 & 11.)  Because there is no state court decision addressing the merits of

10  petitioner's claim that his right to due process was violated by the improper admission of DNA

11  and fingerprint analysis into evidence at his trial, the court will decide this claim de novo.

12  Nulph, 333 F.3d at 1056.

13          In the instant petition, petitioner raises only a vague challenge to the "untested

14  scientific evidence" from the "contaminated swabs" and "fingerprint process," and provides no

15  argument, evidence, or citation to the record to support his claim that the admission into evidence

16  of these test results rendered his trial fundamentally unfair.  Petitioner's claim is stated in cursory

17  fashion, without a sufficient explanation of the surrounding facts.  It is well settled that

18  "conclusory allegations which are not supported by a statement of specific facts do not warrant

19  habeas relief."  James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).  Petitioner's claim in this regard

20  does not meet the specificity requirement and should be denied on that basis.

21          In state court, petitioner raised numerous specific challenges to the testimony of

22  several expert witnesses.  For instance, he argued that expert witness Dr. Fitterer, who conducted

23  an examination of vaginal and anal swabs, did not test all of the contents of the victim's body

24  and did not "process[] petitioner's DNA slides for comparison."  (Lodged Document 4,

25  typewritten pages following habeas form petition, at 14.)  Petitioner complained that Kathleen M.

26  Ciula, who testified as an expert criminalist, tested only one of the available rectal swabs; did not

1   send the "vaginal wash" to the lab for DNA testing; did not conduct DNA testing on the victim's

2   clothing; did not analyze the blood of Burnice Redic, who owed the victim money for cocaine;

3   and "never processed petitioner DNA slides for comparison." (Id. at 15.)  Petitioner raised

4   similar challenges to the methodology of expert witnesses Yueng Fung and Tom Crosby, and to

5   the reliability of DNA testing in general. (Id. at 15-17.)  Finally, petitioner challenged the

6   testimony of Detective Wuest, on the grounds that the detective engaged in "misconduct" by

7   preparing contaminated samples of petitioner's DNA and fingerprints "due to aged, dried and

8   contaminated samples," which could produce misleading results. (Id. at 17.)

9           Notwithstanding all of his challenges in state court to the procedures used to

10  collect and analyze the scientific evidence collected at the scene of the crime, petitioner has

11  failed to demonstrate prejudice with respect to this claim.  There is no evidence that the results of

12  the scientific testing were incorrect or that petitioner's trial was rendered fundamentally unfair as

13  a result of improper or inaccurate DNA or fingerprint analysis.  On the contrary, the state court

14  record reflects that the specimens taken from the victim and the testing of DNA and fingerprint

15  evidence was conducted by experts in accordance with appropriate standards.  (See RT at 248-51,

16  259-62; 415-21.)  Petitioner's fingerprint was found on the interior window of the passenger door

17  of the victim's car. (Id. at 303-17.)  Petitioner's DNA matched rectal and vaginal sperm samples

18  taken from the victim.  (Id. at 403, 406, 417, 421.)  There is no evidence that the expert witnesses

19  who testified at petitioner's trial did not have sufficient expertise.  There is also no evidence that

20  any testing was conducted inappropriately or that admission of the test results erroneously

21  identified an innocent man as the perpetrator of these crimes.  As the California Court of Appeal

22  explained in connection with one of petitioner's arguments on appeal,

23          The only DNA at the scene was Irene's, her husband's and
            defendant's.  Defendant admitted to his ex-girlfriend that he had
24          killed a woman and he provided her with details of the crime and
            scene that were not then publicly known.  While in jail, he
25          admitted to other inmates he had choked Irene to death after having
            sex with her in exchange for drugs.  His fingerprint was found in

26

14

1

> Irene's car.  In short, there was no direct or circumstantial evidence
> linking any third person to the actual perpetration of this crime.

2

3   (Opinion at 10.)  Under these circumstances, petitioner has failed to demonstrate that the

4   admission into evidence of DNA and fingerprint test results violated his due process right to a

5   fair trial.  Accordingly, he is not entitled to habeas relief on this claim.

6         B.   Request for Substitute Counsel

7         Petitioner claims that the trial court violated his constitutional rights when it

8   denied his motion for substitute counsel made pursuant to People v. Marsden, 2 Cal. 3d 118, 126

9   (1970).  (Pet. at 5; Traverse at 3-4.)[4]  Petitioner raised this claim for the first time in his petition

10  for a writ of habeas corpus filed in the San Joaquin County Superior Court.  (Lodged Document

11  8, typewritten pages following habeas form petition, at 2 & 11-13.)  The Superior Court rejected

12  the claim on procedural grounds, reasoning that:

13

> Matters which could have been, but were not, raised on appeal are
> not cognizable on habeas corpus.  See In re Dixon, (1953) 41 C.2d

14
> 756, 759; see also In re Harris (1993) 5 C.4th 813, 834-843
> [exceptions to rule exist] [exceptions not applicable under the facts

15
> of this petition].

16  (Lodged Document 9 at 1.)  Subsequent petitions filed with the California Court of Appeal and

17  the California Supreme Court containing this same claim were summarily denied.  (Lodged

18  Documents 4, 5, 10 & 11.)  Because there is no state court decision addressing the merits of

19  petitioner's claim that his constitutional rights were violated by the denial of his request for

20  substitute counsel, the court will decide this claim de novo.  Nulph, 333 F.3d at 1056.

21        Where a defendant is proceeding with the assistance of counsel, he may move to

22  dismiss or substitute counsel, whether appointed or retained.   The grant or denial of such a

23

24        [4]  Petitioner phrases this claim as the "denial of self representation."  (Pet. at 5.)
    However, a review of petitioner's filings here and in state court make clear that he is challenging

25  the denial of his Marsden motion by the trial court.  Petitioner points to no instance in the record
    when he asked to represent himself.  Accordingly, the court will construe petitioner's claim as a

26  violation of his right to counsel.

                                             15

1    motion may depend on its timeliness and the nature of the conflict between the defendant and

2    current counsel.  United States v. McClendon, 782 F.2d 785, 789 (9th Cir. 1986).  In assessing a

3    federal trial court's decision to deny a motion for substitute counsel on direct appeal three factors

4    are to be considered: "'(1) timeliness of the motion to dismiss counsel; (2) the adequacy of the

5    court's inquiry into the defendant's complaint; and (3) whether the conflict between the defendant

6    and his attorney was so great that it resulted in a total lack of communication preventing an

7    adequate defense.'"  Id. (quoting United States v. Mills, 597 F.2d 693, 700 (9th Cir. 1979)).  See

8    also United States v. Musa, 220 F.3d 1096, 1102 (9th Cir. 2000).

9            The Ninth Circuit Court Appeals has ruled that in assessing such a claim in the

10   context of a § 2254 proceeding such as this, the focus is different than that on direct review.  In

11   Schell v. Witek, 218 F.3d 1017 (9th Cir. 2000) (en banc) the court stated:

12           Our primary reason for accepting this case for en banc review was
             to correct the standard of review we have been using to examine
13           the constitutionality of a state court's handling of a motion to
             substitute appointed counsel based on allegations of an
14           irreconcilable conflict.  In Bland, we said that the test is whether a
             state court's denial of such a motion was for an "abuse of
15           discretion."  Bland, 20 F.3d at 1475.

16                                          * * *

17           [O]ur only concern when reviewing the constitutionality of a state-
             court conviction is whether the petitioner is "in custody in
18           violation of the Constitution or laws or treaties of the United
             States."  28 U.S.C. § 2254(a).  See also Coleman v. Thompson,
19           501 U.S. 722, 730, 111 S.Ct. 2546. 115 L.Ed. 640 (1991) ("The
             [habeas] court does not review a judgment but the lawfulness of
20           the petitioner's custody simpliciter.") (emphasis in original).  A
             particular abuse of discretion by a state court may amount also to a
21           violation of the Constitution, but not every state court abuse of
             discretion has the same effect.  Accordingly, to the extent that they
22           conflict with this opinion, we overrule Bland and Crandell v.
             Bunnell, 144 F.3d 1213 (9th Cir. 1998).

23

24   Id. at 1024-25 (footnotes omitted).  The court determined that it was "well established and clear

25   that the Sixth Amendment requires on the record an appropriate inquiry into the grounds of [a

26   motion for substitute counsel] be resolved on the merits before the case goes forward."  218 F.3d

                                             16

1  at 1025.  See also Hudson v. Rushen, 686 F.2d 826, 829 (9th Cir. 1982) ("Thus, the state trial

2  court's summary denial of a defendant's motion for new counsel without further inquiry violated

3  the Sixth Amendment.")

4          The state court record reflects that the trial court held a hearing on petitioner's

5  request for substitute counsel.  (Docket No. 43) (sealed transcript of Marsden hearing).

6  Petitioner informed the trial court that he wanted to "talk to another lawyer" because he and his

7  counsel were "not agreeing on stuff."  (Id. at 2.)  The trial court told petitioner that this was "not

8  grounds to have your lawyer relieved."  (Id.)  Petitioner's trial counsel then explained to the court

9  that he and petitioner were not experiencing "irreconcilable differences" or a breakdown in their

10  relationship, but that counsel was refusing to call a witness who he believed was "being false."

11  (Id.)  Counsel explained that this witness was a possible replacement witness for petitioner's

12  mother, who had died a few days prior to the Marsden hearing.  (Id. at 3.)  Petitioner's trial

13  counsel also stated that petitioner was "concerned" about the advice counsel was giving him, and

14  that a possible way to resolve that problem was for the trial court to "appoint a second attorney to

15  talk to [petitioner], to explain it so that he understands he has to rely on my decisions in these

16  cases."  (Id.)  Trial counsel stated that he wanted petitioner "to be comfortable why I'm telling

17  him to do certain things."  (Id.)  He also stated that he wanted another attorney to explain to

18  petitioner the risks of testifying in his own defense.  (Id. at 5.)  After trial counsel concluded his

19  explanation, the trial court asked petitioner whether that was "it in a nutshell."  (Id. at 3.)

20  Petitioner gave an affirmative nod and then said "yes."  (Id. at 4.)

21          The trial court explained to petitioner that his trial counsel was ethically

22  proscribed from calling a witness who he knew would give false testimony.  (Id.)  The trial judge

23  also informed petitioner that his counsel had many years of experience as a trial lawyer and that

24  he believed petitioner should "rely on his advice and who to call and how to present the

25  testimony that you want presented."  (Id. at 5.)  The trial court agreed to appoint an outside

26  attorney to talk to petitioner for ten hours about some of the problems described by petitioner's

17

1  trial counsel. (Id. at 6.) The court stated that it hadn't "heard or seen anything that indicates that

2  there is reasonable grounds for a Marsden." (Id.) Accordingly, the court denied petitioner's

3  motion for substitute counsel. (Id.)

4          The record reflects that the Marsden hearing was requested by petitioner's counsel

5  in order "bring peace to the relationship" and to give petitioner the opportunity to "express

6  himself" to another attorney without his trial counsel being present. (Id.) Petitioner agreed with

7  his trial counsel's description of the areas of concern and did not attempt to add any additional

8  complaints.[5] The undersigned finds that the trial court made an adequate inquiry into petitioner's

9  complaints and resolved the matter on the merits before proceeding with the case. Accordingly,

10  the trial court's handling of the motion to substitute counsel in this case passes constitutional

11  muster. Schell, 218 F.3d at 1025.

12          Even under the prior "abuse of discretion" standard of review, it appears that the

13  state trial court's resolution of the Marsden motion was appropriate. As described above, the

14  trial court conducted an adequate inquiry into the problems which led to the request for the

15  Marsden hearing. Although counsel described some disagreements over whether petitioner

16  should testify at his trial or whether another witness should testify in place of petitioner's mother,

17  there was no indication that these disagreements resulted in a total lack of communication

18  preventing the presentation of an adequate defense. Under these circumstances, the trial court

19  did not err in denying petitioner's request for new counsel. See United States v. Robinson, 913

20  F.2d 712, 716 (9th Cir. 1990) (no error in failing to offer defendant substitute counsel where the

21

22          [5] In the traverse, petitioner states that he told his trial counsel he "didn't want him to be
   my lawyer anymore," but at the Marsden hearing he "barely got a few words out" when his trial
23  counsel "jumped out of his seat – literally – and was fast talking to the judge." (Traverse at 3-4.)
   Petitioner also states that the judge "told me something about hiring some other lawyer for some
24  allotted time . . . I had no idea what had just happened in there, did I have new counsel or what?"
   (Traverse at 4.) These allegations do not lend support to petitioner's claim that his request for
25  substitute counsel was improperly denied. The transcript of the hearing does not reflect that
   petitioner was unable to speak nor does it suggest that he did not understand what the trial judge
26  was telling him.

1  crux of the problem was defendant's anger at his attorney's refusal to raise defenses to the

2  charges which the attorney considered frivolous); see also United States v. Padilla, 819 F.2d 952,

3  956 (10th Cir. 1987) (finding that defendant's complaints that his appointed counsel refused to

4  structure a defense as he directed did not constitute good cause for substitution of counsel and

5  stating, "[t]he Sixth Amendment provides no right to counsel blindly following a defendant's

6  instructions"). Moreover, to the extent that petitioner simply wanted to discuss his case with

7  another attorney, the trial court granted that request. Accordingly, petitioner's concerns were

8  fully and adequately addressed.

9          For the foregoing reasons, petitioner has failed to demonstrate that his

10  constitutional rights were violated by the manner in which the Marsden hearing was conducted

11  by the trial judge. Accordingly, he is not entitled to relief on this claim.

12          C.  Ineffective Assistance of Counsel

13          Petitioner claims that his trial and appellate counsel rendered ineffective

14  assistance. After setting forth the applicable legal principles, this court will analyze these claims

15  in turn below.

16          1.  Applicable Legal Standards

17          The Sixth Amendment guarantees the effective assistance of counsel. The United

18  States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

19  Strickland v. Washington, 466 U.S. 668 (1984). To support a claim of ineffective assistance of

20  counsel, a petitioner must first show that, considering all the circumstances, counsel's

21  performance fell below an objective standard of reasonableness. 466 U.S. at 687-88. After a

22  petitioner identifies the acts or omissions that are alleged not to have been the result of

23  reasonable professional judgment, the court must determine whether, in light of all the

24  circumstances, the identified acts or omissions were outside the wide range of professionally

25  competent assistance. Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003). Second, a

26  petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland,

19

1    466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for

2    counsel's unprofessional errors, the result of the proceeding would have been different." Id. at

3    694.  A reasonable probability is "a probability sufficient to undermine confidence in the

4    outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981

5    (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was

6    deficient before examining the prejudice suffered by the defendant as a result of the alleged

7    deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

8    sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955

9    (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

10           In assessing an ineffective assistance of counsel claim "[t]here is a strong

11   presumption that counsel's performance falls within the 'wide range of professional assistance.'"

12   Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There

13   is in addition a strong presumption that counsel "exercised acceptable professional judgment in

14   all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

15   Strickland, 466 U.S. at 689).

16           The Strickland standards apply to appellate counsel as well as trial counsel.  Smith

17   v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

18   However, an indigent defendant "does not have a constitutional right to compel appointed

19   counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

20   professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751

21   (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the

22   ability of counsel to present the client's case in accord with counsel's professional evaluation

23   would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

24   Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is

25   not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

26   meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a

20

showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this

context, petitioner must show that, but for appellate counsel's errors, he probably would have

prevailed on appeal.  Id. at 1434 n.9.

> 2.  State Court Decision

In the instant petition, petitioner claims that both his trial and appellate counsel

rendered ineffective assistance.  His claim is stated, in full, as follows:

> Reversal is required when trial (and appeal counsel) failed to put
> on an affirmative defense, object to expert testimony, the
> contaminated processing by detective Wuest of DNA/ fingerprint/
> tape "evidence," particular hearsay statements made by det. Wuest
> and prosecutor.  And the total breakdown in attorney/client
> relationship, resulting in U.S. constitutional violations to effective
> assistance of counsel at trial and reserving listed violations in this
> with violating . . . U.S. constitution, 4, 5, 6, and 14th amendments.

(Pet. at 6.)  In the traverse, petitioner complains that his trial counsel failed to object to the

admission of the tape recorded song, refused to allow petitioner to testify in his defense, failed to

call petitioner's alibi witnesses, took advantage of petitioner's timidity to push his own agenda,

refused to put on a defense, and failed to object to the fingerprint evidence.  (Traverse at 3-5.)

The San Joaquin County Superior Court denied relief to petitioner on these

claims, reasoning as follows:

> Ineffective Assistance of Counsel

> "In order to demonstrate ineffective assistance, a defendant must
> first show counsel's performance was deficient because the
> representation fell below an objective standard of reasonableness
> under prevailing professional norms.  Second, he must show
> prejudice flowing from counsel's performance or lack thereof.
> Prejudice is shown when there is a reasonable probability that, but
> for counsel's unprofessional errors, the result of the proceeding
> would have been different.  A reasonable probability is a
> probability sufficient to undermine confidence in the outcome."
> People v. Williams (1997) 16 C.4th 153, 214.

/////

More particularly, Petitioner complains that counsel failed to call alibi witnesses and character witnesses, and counsel failed to object to certain scientific evidence.

Failure to Call Witnesses

A failure to call certain witnesses in a criminal trial will usually be deemed a trial tactic which the reviewing court will not ordinarily exercise judicial hindsight. People v. Beagle (1972) 6 C.3d 441, 458.  Moreover, Petitioner must specify what favorable evidence, if any, could have been obtained from the witness.  People v. Jackson (1980) 28 C.3d 264, 289.

Here, Petitioner has failed to specify what either the alibi witness or the character witness would testify to.

With attention to the potential character witness, "Experienced trial judges and attorneys are well aware that testimony of an accused's good reputation for honesty and truthfulness is, as often as not, followed by an onslaught of contrary evidence. . . ."  People v. Madaris (1981) 122 C.A.3d 234, 242.

Failure to Object to Evidence

"Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  People v. Felix (1994) 23 C.A.4th 1385, 1394-1395.

Here, Petitioner merely concludes that the scientific evidence presented by the prosecution was unreliable.  Petitioner submits no facts to support such a conclusion.  Vague or conclusionary allegations do not warrant habeas relief.  People v. Duvall (1995) 9 C.4th 464, 474.

(Lodged Document 9, at 2.)

3.  Trial Counsel

Petitioner's claims that his trial counsel rendered ineffective assistance because of his failure to "put on an affirmative defense," "object to expert testimony," object to "hearsay statements made by det. Wuest and prosecutor," and call unspecified "alibi witnesses" are vague and conclusory and should be rejected on that basis.  James, 24 F.3d at 26.  Petitioner's failure to identify the type of defense, the alibi witnesses and the substance of their proposed testimony, or

22

1 the nature of the objections counsel should have made, is fatal to these claims.  Petitioner has

2 also failed to demonstrate prejudice, or that the result of the proceedings would have been

3 different had counsel put on an "affirmative defense," called alibi witnesses, or objected to

4 "expert testimony" and "hearsay statements."  See Jackson v. Calderon, 211 F.3d 1148, 1159-60

5 (9th Cir. 2000) (even if court assumed that trial counsel was ineffective in not having a physician

6 examine the petitioner, there was not a reasonable probability that the result would have been

7 different if the examination had occurred); Villafuerte v. Stewart, 111 F.3d 616, 632 (9th Cir.

8 1997) (petitioner's ineffective assistance claim rejected where he presented no evidence

9 concerning what counsel would have found had he investigated further, or what lengthier

10 preparation would have accomplished); United States v. Harden, 846 F.2d 1229, 1231-32 (9th

11 Cir. 1988) (no ineffective assistance because of counsel's failure to call a witness where, among

12 other things, there was no evidence in the record that the witness would testify); United States v.

13 Berry, 814 F.2d 1406, 1409 (9th Cir. 1987) (appellant failed to meet prejudice prong of an

14 ineffectiveness claim because he offered no indication of what potential witnesses would have

15 testified to or how their testimony might have changed the outcome of the hearing).

16         Assuming arguendo that trial counsel decided not to present alibi witnesses for

17 tactical reasons, or because he believed their testimony would not have been credible, petitioner's

18 claim of ineffective assistance should be rejected.  "The decision whether to call any witnesses

19 on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort

20 engaged in by defense attorneys in almost every trial."  United States v. Nersesian, 824 F.2d

21 1294, 1321 (2nd Cir. 1987).  Moreover, petitioner does not identify any witnesses that his

22 counsel should have called who would have been helpful to his case.

23         Petitioner also challenges his trial counsel's decision to rest on the state of the

24 evidence instead of calling witnesses, including petitioner, to present "a defense."  (Pet. at 5;

25 Traverse at 3.)  Petitioner states that he wanted to "explain what happened," but his trial attorney

26 "said 'no.'"  (Traverse at 3.)  Petitioner has failed to demonstrate that trial counsel's decision to

1  put the prosecution to its burden of proof was an unreasonable strategy under the circumstances

2  of this case.   Counsel's reasonable tactical decisions, including decisions with regard to the

3  presentation of the case, are "virtually unchallengeable."  Strickland, 466 U.S. at 690.  There is

4  no evidence that putting petitioner on the stand to "explain what happened" would have led to a

5  different outcome at trial.  On the contrary, in light of the overwhelming evidence of petitioner's

6  commission of these crimes, trial counsel's advice to petitioner that he should not testify was

7  clearly within the range of sound trial strategy and did not result in prejudice.  See Burger v.

8  Kemp, 483 U.S. 776, 791-92 (1987) (counsel acted reasonably when he elected not to call his

9  client as a witness); Medley v. Runnels, 506 F.3d 857, 861-862 (9th Cir. 2007) (petitioner's

10  argument that his trial attorney's decision not to put him on the witness stand violated his right to

11  testify rejected where petitioner failed to show that his failure to testify was prejudicial); United

12  States v. Curtis, 742 F.2d 1070, 1076 (7th Cir. 1984) ("when a defendant asserts that he desires

13  to exercise his constitutional right to testify truthfully, counsel's duty is to inform the defendant

14  why he believes this course will be unwise or dangerous)."[6]

15          Petitioner has also failed to establish prejudice with respect to his claims that his

16  trial counsel rendered ineffective assistance by failing to object to the fingerprint and DNA

17  evidence admitted at his trial.  As explained above, there is no evidence that the scientific

18  evidence introduced at petitioner's trial was inadmissible or unreliable.  Counsel's failure to

19  make a meritless objection to the admission of evidence does not constitute ineffective

21      [6] It is true that a criminal defendant has a constitutional right to testify truthfully.  Rock v. Arkansas, 483 U.S. 44 (1987); Nix v. Whiteside, 475 U.S. 157, 173 (1986).  Although petitioner's trial counsel informed the court during the Marsden hearing that he wanted another attorney to explain to petitioner the risks of taking the stand, there is nothing in the record indicating that petitioner insisted on, but was denied, the right to testify.  Rather, it appears that petitioner wanted to testify but acceded to his counsel's advice (and presumably the advice of advisory counsel) that it was not in his best interests to do so.  Petitioner has not directed the court's attention to any part of the state court record wherein he asserted his right to testify but was prevented from doing so.  Cf. United States v. Curtis, 742 F.2d 1070, 1076 (7th Cir. 1984) ("if a criminal defendant insists on testifying, however irrational that insistence might be from a tactical viewpoint, counsel must accede").

24

1  assistance.  Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing Boag v. Raines, 769

2  F.2d 1341, 1344 (9th Cir. 1985)).  See also Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996)

3  ("the failure to take a futile action can never be deficient performance").

4            Petitioner's unsupported allegations regarding his suspicions about Detective

5  Wuest's testimony are insufficient to support his claim of ineffective assistance.  With regard to

6  the fingerprint evidence, petitioner explains that his fingerprints were in the state database prior

7  to the commission of the murder, and he questions why his fingerprints were not identified when

8  the victim's car was tested for prints the first time, but were only identified after Detective Wuest

9  took his fingerprints after the crime was committed.  (Traverse at 5.)  The record before the court

10 reflects that an automated comparison of the fingerprint found in the victim's car with

11 fingerprints in the state database conducted in October of 1998, did not identify petitioner as a

12 match, whereas petitioner's fingerprint was identified as a match in August of 1999, after his

13 fingerprints were taken by Detective Wuest.  (RT at 300-08.)  Petitioner also contends that

14 Detective Wuest testified about a "gas indicator light" found in the victim's car, and argues that

15 the car did not contain such a light.  (Traverse at 5; RT at 549.)  He faults his trial counsel for

16 failing to object to these aspects of Detective Wuest's testimony.  (Traverse at 5.)  However,

17 petitioner fails to make any showing that the result of the proceedings would have been different

18 had his trial counsel objected to Detective Wuest's testimony.  Petitioner's insinuations that

19 Wuest's testimony was false or that the fingerprint evidence was manufactured is insufficient to

20 support his claim of ineffective assistance of counsel.   After a review of the trial testimony of

21 Detective Wuest, this court does not find any instance where the performance of petitioner's trial

22 counsel fell outside the "wide range of professional assistance."  Strickland, 466 U.S. at 689.

23           Petitioner has also failed to demonstrate that there was a "breakdown in

24 attorney/client relationship."  (Pet. at 6.)  As explained above, at the hearing on petitioner's

25 Marsden motion, petitioner's trial counsel specifically stated that he and petitioner were not

26 experiencing "irreconcilable differences" or a breakdown in their relationship.  (Docket No. 43 at

2.)  Petitioner did not contradict this statement by his counsel, but rather agreed with it.  In addition, it appears that petitioner consulted with another attorney regarding the advice he was receiving from his trial counsel.  Petitioner did not raise any other challenges to his representation after this consultation took place.  Petitioner has failed to demonstrate that any problems in the relationship between himself and his trial counsel affected his counsel's performance or prevented counsel from adequately defending petitioner at trial.  Accordingly, petitioner is not entitled to relief on this claim.

Petitioner's claims that his trial counsel rendered ineffective assistance in failing to object to the tape recordings of petitioner's songs and his statements heard over the jail ventilation system should also be rejected.  For the reasons explained above in connection with petitioner's claims of evidentiary error, he has failed to establish that an any objection to this evidence would have had merit, or that the result of the proceedings would have been different had counsel objected thereto.

### 4.  Appellate Counsel

Petitioner's claim regarding his appellate counsel appears to be based on petitioner's contention that his appellate counsel should have raised all of the claims that petitioner has presented in the instant petition.  Appellate counsel's decision to press only issues on appeal that he believed, in his professional judgment, had more merit than the claims suggested by petitioner was "within the range of competence demanded of attorneys in criminal cases."  McMann v. Richardson, 397 U.S. 759, 771 (1970).  Further, this court has not found merit in any of the claims raised in the instant petition.  Of course, petitioner's appellate counsel had no obligation to raise meritless issues on appeal.  Strickland, 466 U.S. at 687-88.

Petitioner has failed to establish that the state court's rejection of his ineffective assistance claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

1  proceeding." 28 U.S.C. § 2254(d).  Accordingly, he is not entitled to habeas relief on these

2  claims.

3                                        CONCLUSION

4            For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

5  application for a writ of habeas corpus be denied.

6            These findings and recommendations are submitted to the United States District

7  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

8  days after being served with these findings and recommendations, any party may file written

9  objections with the court and serve a copy on all parties.  Such a document should be captioned

10  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

11  shall be served and filed within ten days after service of the objections.  The parties are advised

12  that failure to file objections within the specified time may waive the right to appeal the District

13  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

14  DATED: December 15, 2008.

15

16

17  DALE A. DROZD
   UNITED STATES MAGISTRATE JUDGE

18  DAD:8
   loveday105.hc

19

20

21

22

23

24

25

26

                                            27